# EPHRAIM SAVITT
*Attorney at Law*

260 MADISON AVENUE
SUITE 2200
NEW YORK, NEW YORK 10016
WWW.SAVITTESQ.COM

(212) 679-4470
FAX: (212) 679-6770
EPHRAIM@SAVITTESQ.COM

June 11, 2012

***FILED BY ECF***
***COURTESY COPY FOR COURT***
***BY FAX AND MAIL***

Honorable Carol B. Amon
Chief U.S. District Judge
U. S. District Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    **United States v. Joseph Mazella**
               **Assigned Docket No. 11 CR 300 (CBA)**

      Re:    **Defendant Sentencing Submission**

Dear Chief Judge Amon:

      This letter is in reply to both the government's sentencing memorandum filed on May 25, 2012, and the PSR update received on June 5, 2012. In a curious twist, the government flat out agrees with the defense position that it cannot sustain the 4-level enhancement, prescribed by Probation, for "substantially endanger[ing] the solvency or financial security of 100 or more individuals" under U.S.S.G. §2B1.1 (b)(15)(B)(iii). The government also disagrees with Probation as to the applicability of the other 4-level enhancement urged by Probation for the defendant's purportedly being a "financial advisor" under U.S.S.G. §2B1.1 (b)(18)(A)(iii), as defined by the Investment Company Act of 1940. Accordingly, the government, quite correctly, disagrees with Probation's draconian guidelines calculus of 27 to 33.75 years (Govt. Memo., at pages 17-18).

*Honorable Carol Amon*
*June 11, 2012*
*Page 2*

The government, however, recommends a 2-level enhancement for "vulnerable victims" in the sentencing formula, pursuant to U.S.S.G. §3A1.1 (b)(1). The government reasons that because several of the investors were deaf-mutes and others were senior citizens, these "victims" ipso facto are "vulnerable." (Govt. Memo, at pages 19-21). The government arrives at a relatively benign guidelines range (as contrasted with the PSR) of a mere 15.6 to 19.5 years. In illustrative terms, the PSR holds Mazella deservant of sentencings reserved for arch-terrorists or mass murderers, whereas the government puts him one level below the minimum state punishment for the cold-blooded murder of one victim, or, alternatively, for being the head of the multi-billion dollar fraud scheme with tens of thousands of investor victims, such as those who had been WorldCom or Enron shareholders.

The PSR Addendum counters that the government's arithmetic is wrong because: 1) the "substantial endangerment" of 100 or more investors applies, although it is unclear why Probation suddenly purports to know better than the prosecution what it can prove; 2) Mazella was an "investment advisor," although Probation's explanation as to how it arrived at this astonishing conclusion is, well, astonishing; and 3) the government is indisputably incorrect in equating all senior citizens and persons who are deaf-mutes with "vulnerable" victims so that the 2-level enhancement on that ground is erroneous.

Truth be told, there is much truth in both of these competing computations. Probation is clearly correct that the vulnerability 2-level enhancement does not apply. At the same time, the government knows its business and its proof better than Probation when it dismisses the 8-level combined enhancements for "100 or more financially jeopardized" victims and for Mazella's novel but insupportable status as an "investment advisor."

They are both right, yet wrong at the same time. Seniors and persons with physical disabilities are not always vulnerable. Only 40 "investors" wrote letters as "victims" and only a

handful of those claimed they were jeopardized financially as a result. The PSR Addendum does not agree that "substantial financial jeopardy" for individuals is akin, in terms of the Commentary definition, to a "substantially endangered" financial institution. Instead, it offers no competing definition and equates every victim with a "substantially jeopardized" victim. This gives no meaning at all to the 4-level enhancement and, by logical inference, suggests that the enhancement should apply in all fraud cases. We know that can't be right, either. For the same reason, if Mazella is an "investment advisor," then every fraud case would automatically result in this 4-level enhancement for the person who committed the fraud, which makes no sense within the advisory Guidelines framework on prior applications of this enhancement.

In short, the guidelines calculus, that makes sense based on the trial evidence, as we set forth in Mazella's sentencing memorandum, produces an advisory sentencing range of 11 to 14 years. That still elevates Mazella above literally every fraud defendant to have been sentenced in federal or state courts in the Second Circuit or New York metropolitan area. Clear cut examples of comparative punishments for substantially greater frauds, both in terms of financial losses and number of victims, would, in fact, suggest that a proportional sentence, based on the comparative factors alone, is closer to the 5-year sentence we recommend than the 11 to 19 year guidelines sentence proposed by the government, and certainly much closer to our proposal than the astronomically ridiculous disproportionate sentence that the PSR urges.

In its memorandum, the government has a chart of sentenced defendants (at pages 24-25) whose sentences ranged from 50-years for a $3.7 billion loss sustained by 500 victims to a 15.6-year sentence for a $1 million loss to 70 victims (United States v. Hall, 610 F.3d 727 (D.C. Cir. 2010)). Apart from the fact that Hall seems to carry the high-water mark nationally for $1 million fraud, which is hardly the median yardstick by which to judge proportionality, Hall also

*Honorable Carol Amon*
*June 11, 2012*
*Page 4*

involved a defendant who obstructed justice, a distinction that certainly does not apply to Mazella.

Only one case in our district makes the government "high water mark" chart. In United States v. Barry, Docket No. 09 CR 833 (RJD) (EDNY 2010), Your Honor's predecessor as Chief Judge and a distinguished and fair jurist in his own right imposed a 20-year sentence for a defendant responsible for a 24 million dollar fraud involving 800 victims and lasting a whopping 30 years. Barry case involved a scheme that lasted 26 years longer and involved over 600 victims more than the charged scheme in this case. As the government, represented by the lead AUSA in this case, stated in its sentencing memorandum in the Barry case, in which it urged a 30-year sentence:

> Philip Barry's scam was no ordinary Ponzi scheme. First the government is aware of no Ponzi scheme in United States history that lasted as long as Barry's fraud. The duration of Barry's scam – 30-years can be attributed to a number of factors. But the government believes that Barry was able to fool his clients for so long primarily because, as the evidence at trial established, 1) Barry was, and still is, a master manipulator and an expert liar, and 2) very few of Barry's victims had the financial acumen to question Barry and obtain sufficient information whereby they might feel confident enough to go to the authorities. Second, the financial scope of Barry's offense cannot be minimized. Although the total actual losses in this case might be less than those seen in other Ponzi schemes uncovered in recent years, the losses in this case must be considered in context due to nature of Barry's victims as compared with victims of other Ponzi schemers. As discussed more fully below/above, Barry's victims were generally working people and retirees who did not earn significant salaries, had relatively little savings, and lived modestly. Although their actual losses, in terms of actual dollars, might pale in comparison to those sustained by victims in other cases, the percentage of their financial holdings lost to Barry's criminal conduct is arguably much more severe. In sum, the nature and circumstances of the offense in this case, and specifically, the duration, geographic scope, and amount of loss caused weigh heavily in favor of a Guidelines sentence.

Barry Govt. memo (filed 6/6/2011) at pages 31-32.

Unquestionably, Mazella cannot be portrayed to be either on the level of the multi-billion champion Ponzi schemers and investment fraudsters Skilling, Ebbers, Rajaratnam, Rigas or

*Honorable Carol Amon*
*June 11, 2012*
*Page 5*

Kozlowski, among others, or on par with a comparatively (to Skilling, <u>et al</u>) low-level fraudster such as Barry, who bilked 800 investors of over $10 million more than in this case during a fraud period that spanned seven times in duration of the fraud period charged in this case.

I respectfully ask the Court to credit the competing cross-criticisms of the government and Probation as to the unjustified competing enhancements that each erroneously proposes. Although neither the government nor Probation has yet come to grips with the reality that the mandatory Guidelines sentencing regime has been struck down as unconstitutional by the U.S. Supreme Court the better part of a decade ago, we urge the Court to implement a downward variance in accordance with the 18 U.S.C. §3553 (a) factors for the reasons set forth in detail in our sentencing memorandum.

I thank the Court for your courtesy and consideration.

Respectfully submitted,

_____
Ephraim Savitt, Esq.

Cc: AUSA John Nowak
AUSA Winston Paes
P.O. Victoria Aguilar
Ying Stafford, Esq.
Joseph Mazella